# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

**ALFREDO Z. DELGADO,**

                **Plaintiff,**

-vs-                                            **Case No.  A-09-CA-571-SS**

**SUSAN COMBS, TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, et. al.,**

                **Defendants.**

_____

# O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Susan Combs, Texas Comptroller of Public Accounts ("Defendant")'s Motion to File Sealed Document [#29], Plaintiff Alfredo Delgado, proceeding pro se, ("Plaintiff")'s Objections [#32], Defendant's Motion to Exclude the Testimony of Plaintiff's Expert, Defendant's Motion for Summary Judgment [#35], Plaintiff's Response [#36], and the "Friend of Court Brief" filed in support of Plaintiff by Kenneth Koym, "Attorney of Fact," alleged psychotherapist, and a non-party to the suit.  As an initial matter, Defendant's Motion to File Documents Under Seal [#29] is GRANTED.  In addition, the underlying motion to be sealed, Defendant's Objections to Testimony of Plaintiff's Expert and Motion to Exclude Testimony is also GRANTED.[1]  Having

---

[1] Any legitimate psychotherapist would have insisted on sealing a report containing medical and other private information of Plaintiff and his family.  Although Koym is apparently a licensed psychotherapist (and also purportedly a Texas State Bar MCLE Provider, which the Court finds disconcerting), his report is not the work of a competent practitioner.  Rather, it is often incomprehensible and entirely unrelated to Plaintiff's claims of race and sex discrimination.  Instead it relates almost entirely to allegations of police harassment over three months *after* Plaintiff's employment was terminated.  This report cannot possibly assist the trier of fact to understand the evidence and thus is excluded under Federal Rule of Evidence 702.

reviewed the other motions, responses, objections, applicable law, and the case file as a whole, the Court issues the following order and opinion.

**Background**

Plaintiff filed this suit pro se, alleging claims against five employees of the under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), Title I of the Age Discrimination in Employment Act, 29 U.S.C. §623(a) ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA"), and the Vietnam Era Veterans Readjustment Assistance Act, 38 U.S.C. § 4212 ("VEVRAA"). Pl.'s Compl. at 1. Plaintiff alleged discrimination based on race, sex, national origin, age, disability, and his status as a Vietnam veteran. The Court granted Defendants' motion to dismiss all Defendants except Defendant Combs and all claims except Plaintiff's Title VII race and sex discrimination claims. Order [#14]. The Order inadvertently indicated Plaintiff's claims under Title VII for discrimination on the basis of race, sex, and *disability* were not dismissed. *See* Order [#14] at 10. There is no claim for disability discrimination under Title VII, which outlaws discrimination "because of such individual's race, color, religion, sex, or national origin," and the Order quoted this portion of the statute, 42 U.S.C. § 2000e-2(a). Plaintiff's only disability claims were under the ADA and VEVRAA, and all disability claims were dismissed against all defendants. Even Plaintiff recognizes Title VII protects individuals only "from discrimination on the basis of their race, color, religion, sex, or national origin." Pl. Resp. [#36] at 3. Thus, this order deals with Plaintiff's only remaining claims of race and sex discrimination under Title VII. Plaintiff is an Hispanic, male, Vietnam veteran, who suffers from Post-Traumatic Stress Disorder ("PTSD") due to his time served in the Vietnam War. Pl. Compl. at 3. He alleges his supervisors at the Comptroller's Office were unsympathetic to the challenges he faced as a veteran with PTSD in a

work environment and uneasy about working with him.  *Id.* Attach. A(2).  Due to this, Plaintiff

claims he was subject to "unnecessary surveillance" by his supervisor.  *Id.*  Plaintiff also claims he

was given poor evaluations, docked vacation time, and placed on probation due to discrimination

based on his age, race, and national origin.  *Id.*

        Plaintiff worked for Defendant from November 25, 2005 until his termination on October

30, 2008.  *See* Def. Ex. A at 13.  Defendant has an internet policy stating in relevant part:

> Occasional personal use of local telephones, email, and the Internet must be kept to
> a minimum and must adhere to all division and agency policies and procedures. This
> minimal use may not interfere with the conduct of agency business or disrupt the
> work place and must be purely incidental to the performance of assigned job duties.
>                           \***
> An employee who violates or fails to comply with this policy . . . is subject to
> disciplinary action, including immediate termination from employment.

*See* Def. Ex. B at 54, 56.  Plaintiff testified he received the internet policy.  Def. Ex. C at 60.

        On July 11, 2007, Plaintiff sent a non-work-related, personal email from his work email

account during work hours to a friend regarding problems in Plaintiff's church.  Def. Ex. A at 3, 16.

Plaintiff's supervisor at the time, Irene Cage, discovered the email when Plaintiff left the office for

the day without turning off his computer and left the email open on his computer screen.  *Id.* at 14.

Following Ms. Cage's discovery of Plaintiff's personal email, Defendant conducted a review of

Plaintiff's email and internet usage and determined his usage amounted to more than minimal use

of state resources.  *Id.*  On July 18, 2007, Ms. Cage gave Plaintiff a written reprimand, which

reiterated the information security and internet use policies and instructed Plaintiff his personal use

of the internet and email should be kept to a minimum.  *Id.* at 14-15.  The written reprimand

specifically reminded Plaintiff the internet policy allowing for "occasional personal use" of the

internet "must not interfere with the conduct of agency business and it must be purely incidental to

the performance of assigned job duties." *Id.* Plaintiff was also warned if he failed to adhere to the internet policy he could face additional disciplinary action, including immediate termination from employment. *Id.* at 15. Following his receipt of the July 2007 written reprimand, Plaintiff testified he understood his personal use of the internet and email should be kept to a minimum as required by the internet use policy. *Id.* at 3.

In December 2007 and again in March 2008, Plaintiff's supervisors provided him with written feedback stating he was not meeting his production requirements and was making too many errors in his work. *See id.* at 17-25 (performance evaluations and communications). Due to these performance issues as well as Plaintiff's excessive use of the internet in his position in the Exempt Organizations section, the Manager of the Tax Policy division, Bryant Lomax, decided to laterally transfer Plaintiff to the call center of the Tax Assistance section on April 1, 2008. Def. Ex. D at 66. This move did not result in any demotion or loss of pay. *Id.* Plaintiff's supervisors in Tax Assistance were Jo Samuel and Jo Ann Vela. Def. Ex. E. at 68-69. Plaintiff's new job duties in the call center required him to spend a minimum of 90% of his time on the telephone providing taxpayer customer assistance. *Id.* at 69. Notably, Plaintiff's job duties did not require any use of the internet. *Id.* In addition, all employees in the call center had their calls routinely monitored to ensure quality customer service. *Id.*

On June 27, 2008, Plaintiff was speaking loudly on the phone and Ms. Samuel asked him to be quiet because he was disturbing other call center employees. *See* Pl. Resp. at 4-5. Shortly after this, Plaintiff and a Caucasian co-worker, Phillip Knisely, had a heated discussion regarding Plaintiff being too loud on the phone. *Id.* Ms. Samuel had to step in to stop the argument between Plaintiff and Knisely. *See id.* Following the incident, Ms. Samuel called Knisely into her office and verbally

counseled him regarding his inappropriate behavior.  Def. Ex. E at 69.   Ms. Samuel also told Plaintiff he needed to refrain from loud outbursts.  *Id.*

On June 30, 2008, one of Plaintiff's calls was monitored by Ms. Vela and another call center employee, Donald Dauterive.  *Id.*; *see also* Def. Ex. A at 28-37.  Ms. Vela and Mr. Dauterive both noted that Plaintiff sounded "very distracted" and sounded as if the caller was interrupting him.  Def. Ex. A at 28-30.  When Mr. Dauterive went to Plaintiff's desk to see what the problem was, Mr. Dauterive observed Plaintiff was on the internet during the call.  *Id.* at 30.  As a result of this incident and other incidents in which Plaintiff was not handling calls appropriately, a review was conducted of Plaintiff's internet usage.  *See id.* at 35-36.  The review determined that, over the course of six weeks, Plaintiff had used the internet for 104.75 hours and had visited more than 50 categories of websites, including sites that were blocked by the employer, racking up over 339,000 internet hits, including news, religion, games, politics, and entertainment sites.  *Id.*

On July 28, 2008, Ms. Samuel placed Plaintiff on probation for six months for excessive internet use, inadequate job performance for failing to meet expectations for quality customer service based on the calls monitored, and insubordination based on an incident in which Plaintiff told Ms. Vela to "tell me what to do, I just want to be left the hell alone."[2]  *See id.* at 27, 31-33, 32-37; Pl. Resp. at 9.  The written probationary report stated Plaintiff was in violation the internet use policy and in the future he must consistently limit his internet activity to minimal use.  *Id.* at 35-36; Def. Ex. E at 69-70.  Plaintiff was further instructed that failure to immediately improve his performance

---

[2]There is some dispute about Plaintiff's exact statement.  The Court uses the quote offered by Plaintiff in his response.  Defendants assert he said "tell me what I need to know and leave me the hell alone."  For the purposes of Plaintiff's claims of race and sex discrimination, the exact statement is unimportant.  Either comment suffices as an example of insubordination.

and behavior consistent with the recommendations in the probationary report was likely to result in the termination of his employment. *Id.* at 37. Plaintiff has admitted he understood his probation to mean he was required to consistently keep his internet use to a minimum to avoid any further personnel action. *Id.* at 10. On September 9, 2008, Plaintiff received a "probation progress report" from Ms. Samuel for the month of August 2008 indicating there was no excessive internet use in August and no insubordination, however Plaintiff was still not meeting call quality monitoring requirements and was late to work on five occasions. *Id.* at 39.

While still on probation, in mid-October 2008, another review of Plaintiff's internet usage was conducted which determined Plaintiff had used the internet for more than 55 hours and had 170,079 internet hits from September 1, 2008 through October 13, 2008. Def. Ex. F at 71-84 (listing websites visited). Additionally, Plaintiff still was not meeting call quality monitoring requirements and was mishandling routine calls. *See* Def. Ex. A at 38-41. Due to Plaintiff's continuing violation of the internet use policy and other performance issues, Plaintiff's employment was terminated on October 30, 2008. *Id.* at 41.

Plaintiff filed his Charge of Discrimination both with the Texas Workforce Commission Civil Rights Division and the United States Equal Employment Opportunity Commission ("EEOC"), both of which were denied. Compl. at Attach. M. He then filed this lawsuit on August 18, 2009. *Id.* at 1. The Court dismissed all of Plaintiff's claims except for his race and sex discrimination claims under Title VII against Defendant Combs. Order [#14]. Defendant filed a motion for summary judgment arguing Plaintiff cannot establish a prima facie case of race or sex discrimination under Title VII because he cannot establish that he was treated less favorably due to his race or sex than were other similarly situated non-Hispanic or female employees under nearly identical

circumstances.  Even if Plaintiff could establish a prima facie case of race or sex discrimination, Defendant argues, there was a legitimate, nondiscriminatory reason for Plaintiff's termination: Plaintiff had been disciplined twice concerning his excessive internet use, was put on probation, and continued to violate the internet usage policy during his probation.  In addition, Defendant argues Plaintiff cannot establish the legitimate, non-discriminatory reason for his termination was a mere pretext for race or sex discrimination.

## Analysis

### I.    Summary Judgment Standard

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  In deciding summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party.  *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996).  The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court."  *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law.  FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial, and may not rest upon mere allegations or denials of its

pleadings. *Anderson*, 477 U.S. at 256–57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the non-movant's burden. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

## II.     Prima Facie Case of Race or Sex Discrimination

To establish a prima facie case of race or sex discrimination under Title VII, an employee must demonstrate: (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in the protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once an employee has made out a prima facie case, an inference of intentional discrimination is raised and the burden of production shifts to the employer, who must offer an alternative non-discriminatory explanation for the adverse employment action. *Id.* (internal citations omitted). If the employer can provide a legitimate nondiscriminatory explanation, the inference of discrimination drops out and the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for bias on the basis of race or sex. *Id.*

Here, Plaintiff cannot establish a prima facie case of race or sex discrimination under Title VII because he cannot establish that he was treated less favorably because of his race or sex than were other similarly situated non-Hispanic or female employees under nearly identical circumstances. Under Fifth Circuit precedent, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* at 260. Here, Plaintiff was terminated because

-8-

of excessive internet use.  Plaintiff claims other employees also used the internet for personal use, but he presents no evidence other employees used the internet as excessively as Plaintiff, nor is there evidence other employees were warned about their use and continued to use the internet excessively. *See* Def. Ex. C at 61.  Moreover, the Texas Workforce Commission Civil Rights Division determined, after investigating Plaintiff's charge of discrimination, the "[a]vailable evidence . . . shows that non- Hispanic [employees and] females . . . *were also* terminated when they violated the policies concerning internet usage and job performance."  Def. Ex. A at 45 (emphasis added). Because Plaintiff cannot establish that a non-Hispanic or female employee engaged in conduct that is "nearly identical" to his conduct but was not discharged, he cannot establish a prima facie case. In fact, aside from one conclusory statement,[3] Plaintiff's response to the summary judgment motion does not dispute the reason for his termination, but merely identifies incidents prior to his termination which he believes indicate race or sex discrimination.  He also focuses a significant amount of his argument on his PTSD and Defendant's alleged discrimination based on this disability. As discussed above, no disability discrimination claims survived dismissal, so these arguments are unhelpful.

Plaintiff argues he has established a prima facie case of race and sex discrimination based on three incidents.[4]  The first incident relates to the argument between Plaintiff and Knisely

---

[3] "Plaintiff's age and experience helps him understand he was discriminated against and terminated for unjust reasons."  Pl. Resp. at 10.

[4] Plaintiff spends several pages of his response arguing a fourth incident which occurred on February 3, 2009, three months after his termination, indicates disparate treatment on the basis of his PTSD.  He explains how the Texas Comptroller's Criminal Investigation Division allegedly came to his home and used "Gestapo tactics" to harass him because his former co-workers had expressed suspicion and concern when they saw Plaintiff parked and on a cell phone a block away from his former office.  Pl. Resp. at 3-4.  The evidence Plaintiff presents regarding this incident does not

described above.  Plaintiff argues since Knisely was not terminated and Plaintiff was terminated four months later, this is an "example of selective disciplinary action . . . discriminatory against Plaintiff's race."  Pl. Resp. at 5.  However, both Plaintiff and his co-worker acted inappropriately and unprofessionally during this June 2008 argument, both were verbally counseled by supervisor Jo Samuel regarding the argument, and neither employee was discharged for his part in the argument. *See* Def. Ex. E at 69.  Plaintiff's belief Knisely should have been discharged in connection with the argument—when Plaintiff himself was not discharged in connection with this argument—simply does not evince race discrimination in any way.

The second incident relates to call monitoring done by Ms. Vela and Mr. Dauterive where they both noted Plaintiff sounded "very distracted" and sounded as if the caller was interrupting him. Def. Ex. A at 28-30.  Essentially, Plaintiff asserts since he is bilingual, Mr. Dauterive and Ms. Vela cannot subjectively determine whether he sounds distracted.  Pl. Resp. at 5-6.  Thus, Plaintiff argues, the performance evaluation which indicated he sounded distracted was discriminatory toward his "linguistic characteristics."  *Id.* at 6.  What Plaintiff ignores in this argument is the evidence Mr. Dauterive went to Plaintiff's desk to see what the problem was, and observed Plaintiff was on the internet during the call.  Def. Ex. A at 30.  In fact, Plaintiff admits this occurred, but is critical because the evaluation does not identify what website he was using.  Pl. Resp. at 6.  In short, Ms. Vela and Mr. Dauterive's assessment of Plaintiff sounding distracted was, in fact, confirmed by

---

indicate any connection to his Title VII race and sex discrimination claims, aside from a conclusory statement asserting "[t]his egregious act against Plaintiff, and his family, is a clear indication of Defendant's plan to 'silence' Plaintiff and as a result violated his protection under Title VII under the race classification."  *Id.* at 4.  This is insufficient to connect an event occurring three months after Plaintiff's termination to Plaintiff's allegations of termination on the basis of race or sex.

observing Plaintiff being distracted from his phone conversation by using the internet while on the phone.

The third event involves Plaintiff's lateral transfer from the Exempt Organizations section to the Tax Assistance section.  Plaintiff basis his sex discrimination claim on his allegation that his former position in Exempt Organizations was filled by a white female employee.  Plaintiff argues, without any evidence, he was the only male in the Exempt Organizations section, and thus his transfer was orchestrated in order to make this section "once again an all female work unit."  Pl. Resp. at 7.   Even if this were true, Plaintiff presents no evidence to dispute the affidavit testimony of his supervisor that Plaintiff was transferred in order to move him to a position involving no internet use since Plaintiff had been excessively using the internet.  *See* Def. Ex. A at 17-25, Ex. D at 66.  In addition, there is evidence the female employee who began working in the Exempt Organizations section three months after Plaintiff's transfer did not actually replace Plaintiff but instead was allowed to work there, although still an employee in the Tax Policy section, as part of an ADA accommodation requested by the employee.  *See* Def. Ex. D at 67.  There is absolutely no evidence—other than Plaintiff's own subjective belief—that the decision to laterally transfer Plaintiff to Tax Assistance in April 2008 was made in order to allow a female employee to begin working in the Exempt Organizations section as part of an ADA accommodation three months later.   In any event, "an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief."  *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001) (quoting *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999).

### III.    Legitimate, Nondiscriminatory Reason for Plaintiff's Termination

Even if Plaintiff could establish a prima facie case of race or sex discrimination, there was clearly a legitimate, nondiscriminatory reason for Plaintiff's termination.  Namely, after Plaintiff had been disciplined twice concerning his excessive internet use and placed on probation because of it, Plaintiff continued to violate the internet usage policy during his probation by spending 55 hours on the internet over a month and a half.  Plaintiff has admitted he visited the New York Times website every day because he was a "news junkie," he also visited weather, traffic, and military websites, and looked for jobs in other state agencies online through the intra-agency web site.  Def. Ex. A at 62-63. None of these websites were related to his job and Plaintiff does not argue they were.  At his Texas Workforce Commission unemployment benefits hearing, Plaintiff testified regarding his internet use during his probation as follows:

> Q.    [By Hearing Officer] Were you using the Internet for personal purposes on state time?
> A.    [By Plaintiff] I was using the Internet to fight boredom.
> Q.    Were you using the Internet for personal reasons on state time?
> A.    Sometimes I did, yes.
> ***
> Q.    Why would you use the Internet for personal reasons 10 to 12 hours[,] after being placed on probation, that being one reason they placed you on probation?
> A.    I would get the email from the New York Times, and I'm a news junkie and I wanted to know what was going on in the world, plus I was incredibly bored.

Def. Ex. C at 61, 63.

Thus, Plaintiff has admitted to spending excessive time on the internet even after being placed on probation for such behavior and being instructed that continuing such behavior could result in his termination.  Because Plaintiff continued to violate the internet policy despite being

-12-

formally disciplined for this in July 2007 and again in July 2008, there was clearly a legitimate, nondiscriminatory reason for Plaintiff's termination in October 2008.

## IV.    Not a Pretext

Finally, Plaintiff cannot establish his termination for excessive internet use was a pretext for race or sex discrimination.  As discussed above, Plaintiff claims the fact his co-worker was not terminated in connection with an argument constituted race discrimination.  In fact, both employees were treated equally in response to this incident.  Both were verbally counseled by supervisor Jo Samuel and neither was discharged for his part in the argument.  *See* Pl. Resp. at 5; Def. Ex. E at 69. Plaintiff's mere subjective belief the decision not to discharge Knisely was somehow based upon race is insufficient to demonstrate pretext.  *See Auguster*, 249 F.3d at 403; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.").    Thus, Plaintiff cannot establish the legitimate, nondiscriminatory reason for his termination, his excessive internet use, was a pretext for race discrimination.

Likewise, Plaintiff cannot establish the legitimate, non-discriminatory reason for his termination was a pretext for sex discrimination.  As noted above, there is absolutely no evidence, other than Plaintiff's own subjective belief, that the decision to laterally transfer Plaintiff to Tax Assistance in April 2008 was made in order to allow a female employee to begin working in the Exempt Organizations section as part of an ADA accommodation three months later.  Moreover, even if Plaintiff was transferred with the intent of replacing him with a woman, the replacement has

no bearing on whether Defendant used Plaintiff's admittedly excessive internet use as a pretext for sex discrimination to terminate him six months after the transfer. Plaintiff has not alleged he was terminated so management could replace him with a female employee, only that he was transferred, which was neither a demotion nor a pay cut. Thus, Plaintiff cannot establish the legitimate, nondiscriminatory reason for his termination, his excessive internet use, was a pretext for sex discrimination.

## Conclusion

Plaintiff presents no evidence to establish a prima facie case for either race or sex discrimination under Title VII. Even assuming he did establish a prima facie case, however, Defendant presents a legitimate, nondiscriminatory reason for Plaintiff's termination. Plaintiff is unable to show Defendant's reason is a pretext. Thus, in accordance with the foregoing,

IT IS ORDERED that Defendant's Motion for Summary Judgment [#35] is GRANTED

SIGNED this the 29th day of September 2010.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE

F:\SPARKS\TEXT\cv09\571 msj.tb.frm

-14-